UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------X   6:23-cv-06233-FPG
STACEY MIRINAVICIENE,

                              Plaintiff,

    -against-

KEUKA COLLEGE, AMY STOREY, BRADLEY FUSTER,
COLLEEN BERTRAND, ANN TUTTLE, ED SILVERMAN,
and KEUKA COLLEGE BOARD OF TRUSTEES,

                              Defendants.
------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HER MOTION FOR PARTIAL SUMMARY JUDGMENT**


Stacey Mirinaviciene
Plaintiff pro se
114 Main Street
P.O. Box 225
Penn Yan, NY 14527

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

STATEMENT OF FACTS.....................................................................................................1

ARGUMENT........................................................................................................................7

    POINT I.    STANDARD OF PROOF ON A MOTION FOR SUMMARY JUDGMENT ON A BREACH OF CONTRACT CASE...................................................................7

    POINT II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER BREACH OF CONTRACT CASE........................................................................................8

        A.    The normal procedures governing faculty separation and discipline applied..................................................................................................8

        B.    Keuka College did not follow its own procedures for a termination for medical reasons.....................................................................................9

        C.    Keuka College did not follow its own procedures for termination for cause..................................................................................................10

        D.    Plaintiff's case did not fall within Keuka College's guidelines concerning Covid-19..............................................................................................10

        E.    Keuka College terminated plaintiff without following its own procedures..........................................................................................13

CONCLUSION....................................................................................................................14

**TABLE OF AUTHORITIES**

Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).................................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................................................7-8

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.1991).....................................................................8

*DeSimone v. Skidmore College*, 159 A.D.2d 926 (3d Dept. 1990)....................................13-14

*Ferrari v. Iona College*, 95 A.D.3d 576, 576 (1st Dept. 2012)................................................13

*Klinge v. Ithaca College*, 167 Misc. 2d 458 (Sup Ct Tompkins Cty 1995), order aff'd as
  modified on other grounds, 235 A.D.2d 724 (3d Dep't 1997)............................................13

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (2d Cir.2004)............8

*Taub v. Columbia University in the City of New York*, 149 A.D.3d 413 (1st Dept. 2017)..........13

Statutes and Other Authorities

Rule 56 of the Federal Rules of Civil Procedure.......................................................................7

Rule 56(a) of the Federal Rules of Civil Procedure..................................................................7

52 N.Y. Jur.2d Employment Relations § 60 (Aug 2023 updated)............................................13

**STATEMENT OF FACTS**

Plaintiff and defendants executed a contract on June 16, 2021 covering the 2021-22 Academic year, i.e., from August 16, 2021-June 15, 2021. Contract, Exhibit 1. The contract sets forth plaintiff's salary and compensation as well as her teaching load and other duties and responsibilities. Contract p. 1.  The Contract specifically references the Faculty Handbook ("FH"), Exhibit 2. Contract, p. 1. . That is, the Contract states:

> It is assumed that all faculty will meet the obligations of professional responsibility, including advisement and other needed academic assistance to students, continued professional growth, and appropriate service to the Division, the College, and to the Community, as outlined by the Faculty Handbook, and as discussed with your Division Chair and approved by the Provost & Vice President for Academic Affairs.

Contract, p. 1.

> Regarding Covid-19, the contract states that Keuka College had the right to
>
> (i) eliminate/restructure courses (including, but not limited to, changing minimum/maximum class sizes or number of sections, establishing earlier or later start dates, other changes to the academic year, offering face-to-face, online and/or hybrid courses/sections, and implementing revised laboratory settings and protocols) as determined by Keuka College's sole discretion; and
>
> (ii) reduce compensation and/or modify/terminate this Agreement if Keuka College determines, in its sole discretion, that: (a) enrollment is or will be reduced (including residence hall enrollment), or (b) governmental or other regulatory requirements or restrictions limit or prevent Keuka College from providing its full academic curriculum in Keuka College's traditional manner (e.g., face-to-face courses on Keuka College's campus or at an AOE location).  There is also a further paragraph stating that Keuka College shall not be held liable for any damage for an employee contracting Covid.

Contract, p. 2.

The FH contains Section B:  Faculty Personnel Policies.  Within that Section is Section VIII. Separation and Sanctions. FH, p. 63.  Section VIII states:

> The guidelines and expectations set forth in Section VIII and Section IX (Letters D and E) shall inform and govern procedures relative to separation of faculty and the grievance processes that result from those separations, except in

1

catastrophically disruptive circumstances that by reasonable measure immediately threaten the College's ability to operate. Examples of such catastrophically disruptive circumstances include (but are not limited to): pandemics, . . . Furthermore, should these catastrophically disruptive circumstances occur, the president of Keuka College must demonstrate to the Faculty Liaison Committee in writing, using verifiable data and specific details, why the guidelines and expectations set forth in Section VIII and Section IX (Letters D and E) shall not inform and govern procedures relative to separation of faculty and the grievance processes that result from those separations.  Absent the above-described and specific circumstances, and absent a written demonstration to the Faculty Liaison Committee by the President of Keuka College described above, the procedures delineated in Sections VIII and IX of the Faculty Handbook will govern any faculty separations, as well as the grievance processes that result from those separations. *Ibid.*

Within Section VIII is subsection "F. Termination for Medical Reasons" that states as follows:

> Termination of an appointment with tenure, or of a probationary or special appointment before the end of the period of appointment, for medical reasons, will be based upon clear and convincing medical evidence that the Faculty member cannot continue to fulfill the terms and conditions of the appointment.
> 1. The decision to terminate will be reached only after there has been appropriate consultation and after the Faculty member concerned, or someone representing the Faculty member, has been informed of the basis of the proposed action and has been afforded an opportunity to present the Faculty member's position and to respond to the evidence.
> 2. If the Faculty member so requests, the evidence will be reviewed by the Faculty Liaison Committee before a final decision is made by the Board of Trustees on the recommendation of the President.
> 3. The Faculty member will be given severance salary not less than as prescribed in AAUP Regulation 8 (Recommended Institutional Regulations on Academic Freedom and Tenure).

FH, p. 67.

Also within Section VIII, is subsection "H. Termination of Appointment by the Institution for Cause," which states:

> Termination of an appointment with continuous tenure, . . . are entitled to due process as outlined . . .
>
> 1. Adequate cause for dismissal will be related directly and substantially to the

2

fitness of the Faculty member in his/her professional capacity as a teacher or researcher. Dismissal will not be used to restrain Faculty members in their exercise of academic freedom or other legal rights. (See AAUP Statement on Academic Freedom.)

2. Before the dismissal of a Faculty member with continuous tenure, or other Faculty member, including those with special appointment is actualized, this should be preceded by:

a. A discussion between the Faculty member and appropriate administrative officers looking toward a mutual settlement;

b. If the decision is made to proceed with the dismissal, a statement of charges, should be framed with reasonable particularity by the President or his/her delegate.

3. Pending a final recommendation by the Hearing Committee as described in Section A, V.C, (7), the Faculty member will be suspended, or assigned to other duties in lieu of suspension, only if immediate harm to himself/herself or others is threatened by his/her continuance. Before suspending a Faculty member, pending an ultimate determination of his/her status through the institution's hearing procedures, the administration will consult with the Professional Standards Committee concerning the propriety, the length, and the other conditions of the suspension. A suspension which is intended to be final is a dismissal, and will be treated as such.

4. Salary will continue during the period of suspension.

FH, pp. 67-68.

Further within Section VIII is "J. Procedures Relating to Termination of Employment," which states:

1. Review: The Board of Trustees will be available for ultimate review in case of termination of appointment.
2. Salary: If the appointment is terminated, the Faculty member will receive salary or notice in accordance with the following schedule:

a. At least three months, if final decision is reached by March 1 (or three months prior to the expiration) of the first year of probationary service.
b. At least six months, if the decision is reached by Dec. 15 of the second year (or after nine months but prior to 18 months) of probationary service; at least one year, if the decision is reached after 18 months of probationary service or if the Faculty member has tenure.

3

FH, p. 68.

FH also contains Section IX. Grievances, Complaints, and Faculty Liaison Committee. FH, p. 69. Under Section IX, is subsection E. Issues Relating to Termination for Medical Reasons, which states:

> If a Faculty member is being terminated because it is determined that s/he can no longer fulfill the terms and conditions of the appointment because of medical reasons, the Faculty member may request that the evidence be reviewed by the Faculty Liaison Committee before a final decision is made by the Board of Trustees on the recommendation of the President.

FH, p. 70.

Also subsection F. Issues Relating to Termination for Cause, which states:

> 1. The President of the College initiates the formal dismissal proceedings by informing the Faculty member, in writing, of the following:
> a. The specific charges which have led to the dismissal action as defined in AAUP Regulation 5(a) (Recommended Institutional Regulations on Academic Freedom and Tenure).
> b. His/her right to request a hearing committee to determine the validity of the reasons and/or whether these charges warrant removal from the Faculty as outlined in Section A, Article V, C, (7).
> c. The Faculty member's procedural rights, either in detail or by reference to published regulations.
> d. The Faculty member has 10 days from receipt of the letter to respond, in writing, whether s/he wishes to challenge the dismissal charges by requesting a formal hearing.
> 2. The Faculty member should respond in writing within 10 days of the receipt of the letter whether s/he wishes to challenge the dismissal charges by requesting a formal hearing.

On or about December 21, 2021, plaintiff heard a rumor that Keuka College was requiring all faculty and staff to prove they received a Covid booster within thirty days, thereof or to obtain a religious or medical exemption. Declaration, Exhibit 3, ¶ 9. This was during the college's semester break.

On February 8, 2022, plaintiff emailed her Division Chair Ed Silverman and said she was making an appointment with her doctor, but had a cough so she probably would not get a

4

vaccine. Mr. Silverman responded that Brad emailed him this morning asking for a coverage plan. He said he did not want "coverage" and wanted plaintiff to continue teaching. Plaintiff said she would get an answer today but she did not want to miss teaching her classes. Mr. Silverman asked when can she get an exemption? Plaintiff said it was not her idea to stop teaching and that she was working with her doctors to get an exemption as soon as possible. Mr. Silverman said she totally supported her but needed to know her endgame as soon as possible. Email Exchange A, Exhibit 4.

On February 9, 2022, Chair Silverman sent an email to plaintiff stating "what's up. I want to help you but time is running out." Plaintiff said she was calling her doctor now. Email Exchange B, Exhibit 5.

On February 9, 2022, plaintiff sent an email stating she was not resigning and would send him an email after she saw her doctor. On February 10th, plaintiff told Mr. Silverman she got a doctor's appointment for February 15, 2022. Mr. Silverman asked for proof of the appointment and plaintiff sent it. Email Exchange C, Exhibit 6.

On February 14, 2022, plaintiff wrote to Ed Silverman, her Division Chair, asking if she were fired. He responded "no, you have thirty days from the notice period. So hopefully, your appointment tomorrow will solve everything. Email Exchange D, Exhibit 7.

Plaintiff went to her appointment on February 15th. She was given a blood test, but the nurse practitioner who administered it was not able to give her a medical exemption. She offered to teach online or to teach at her own risk and wear a mask. She mentioned that by that time, the mask mandate was lifted and that the vaccine mandate would also probably be lifted. Chair Silverman said according to the policy that she could not come back unless she was boosted or had an exemption. He asked if the blood test was related to getting boosted.

5

Plaintiff said yes. *Id.*

On March 11, 2022, Associate Vice President of Human Resources of Keuka College Colleen Betrand sent an email, Email Exchange E, Exhibit 8, to plaintiff with attached letter. Betrand Letter, March 11, 2022, Exhibit 9. Said letter states that based on the Covid Booster Policy, that plaintiff was placed on unpaid leave for thirty days to produced documentation of either vaccine or exemption. That period expired on March 9th, thus, as of March 10th, she was deemed to have resigned her position.

Plaintiff responded by email on March 11th to the Betrand email stating that she did not resign. Email Exchange E. She followed up with a letter, dated March 13th, stating:

> I am in receipt of your letter dated March 11, 2022 wherein you presume that I voluntarily resigned my position at Keuka College.
> This is categorically false. I did not resign voluntarily or otherwise. Your letter does not obfuscate the fact that Keuka College unilaterally terminated my employment based on my personal health decision which does not align with Keuka College's draconian measure, known as the Covid Booster Policy, which is currently at odds with CDC guidelines and the widely anticipated New York State's removal of the Covid-19 vaccine passport mandate.
> In case, the above is not clear to you - I do not, and did not, resign my position at Keuka College. Please confirm that Keuka College has terminated my employment.

Plaintiff letter to Betrand, March 13, 2022, Exhibit 10.

On March 18, 2022, Ms. Betrand sent a letter via email re. plaintiff's final check. Betrand Letter re. final check, March 18, 2022, Exhibit 11.

On April 5, 2022, Mark Criley of the American Association of University Professors ("AAUP"), wrote to Keuka College demanding the reinstatement of plaintiff with backpay. It noted that, as a tenured professor, she was entitled to an adjudicative hearing of record regarding her fitness and professional capacity as a faculty member. Plaintiff's termination violated both Keuka College's faculty handbook as well as the principles of AAUP. AAUP Letter 1,

Exhibit 12.

On April 28, 2022, AAUP sent a brief second letter. AAUP Letter 2, Exhibit 13. The letter said it had not received a response and reiterated that "an administration's action to dismiss a professor without first having demonstrated adequate cause in a hearing of record before a duly constituted faculty body is a matter of basic concern to our Association under its longstanding responsibilities."

After finally being able to obtain insurance and make an appointment, plaintiff received her booster on June 29, 2022. Covid Vaccination Record Card, Exhibit 14; Declaration, Exhibit 3 ¶ 13. On that same day, plaintiff received a letter from a friend stating that "Keuka is still using you and your credentials to advertise the accounting program" with a link to the college's website. Email Exchange F, Exhibit 15.

Keuka College had a law firm respond to AAUP. On September 8, 2022, it sent a final letter. AAUP observed that plaintiff had not been reinstated nor afforded a dismissal hearing. *Significantly, Keuka had at that time rescinded the vaccine policy*. AAUP Letter 3, Exhibit 16.

Plaintiff now moves pursuant to Rule 56(a) for partial summary judgment on her claim for breach of contract.

## ARGUMENT

### POINT I.

### STANDARD OF PROOF FOR A MOTION FOR SUMMARY JUDGMENT IN A BREACH OF CONTRACT CASE

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

7

242, 248 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004) (citations omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## POINT II.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER BREACH OF CONTRACT CLAIM

Plaintiff has shown she executed a contract with defendant on June 16, 2021 covering the 2021-22 Academic year, i.e., from August 16, 2021-June 15, 2021. The Contract requires the parties to abide by the Faculty Handbook ("FH") and the Employee Handbook ("EH").

A.  <u>The normal procedures governing faculty separation and discipline applied</u>

The FH contains Section B:  Faculty Personnel Policies.  Within that Section is Section VIII. Separation and Sanctions. FH, p. 63.  Section VIII states:

> The guidelines and expectations set forth in Section VIII and Section IX (Letters D and E) shall inform and govern procedures relative to separation of faculty and the grievance processes that result from those separations, except in catastrophically disruptive circumstances that by reasonable measure

8

> immediately threaten the College's ability to operate. Examples of such catastrophically disruptive circumstances include (but are not limited to): pandemics, . . . *Furthermore, should these catastrophically disruptive circumstances occur, the president of Keuka College must demonstrate to the Faculty Liaison Committee in writing, using verifiable data and specific details, why the guidelines and expectations set forth in Section VIII and Section IX (Letters D and E) shall not inform and govern procedures relative to separation of faculty and the grievance processes that result from those separations. Absent the above-described and specific circumstances, and absent a written demonstration to the Faculty Liaison Committee by the President of Keuka College described above, the procedures delineated in Sections VIII and IX of the Faculty Handbook will govern any faculty separations, as well as the grievance processes that result from those separations. Ibid.*

(emphasis added). In this case, there was no "demonstration to the Faculty Liaison Committee by the President of Keuka College that catastrophically circumstances occurred," thus, the procedures delineated in Sections VIII and IX of the Faculty Handbook governs any faculty separations, as well as the grievance processes that result from those separations.

B.   <u>Keuka College did not follow its own procedures for a termination for medical reasons</u>

Within Section VIII is subsection "F. Termination for Medical Reasons" that states as follows:

> Termination of an appointment with tenure, or of a probationary or special appointment before the end of the period of appointment, for medical reasons, will be based upon clear and convincing medical evidence that the Faculty member cannot continue to fulfill the terms and conditions of the appointment.
> 1. The decision to terminate will be reached only after there has been appropriate consultation and after the Faculty member concerned, or someone representing the Faculty member, has been informed of the basis of the proposed action and has been afforded an opportunity to present the Faculty member's position and to respond to the evidence.
> 2. If the Faculty member so requests, the evidence will be reviewed by the Faculty Liaison Committee before a final decision is made by the Board of Trustees on the recommendation of the President.
> 3. The Faculty member will be given severance salary not less than as prescribed in AAUP Regulation 8 (Recommended Institutional Regulations on Academic Freedom and Tenure).

FH, p. 67.

In this case, if we assume plaintiff was terminated for medical reasons, Keuka College did not follow its own procedures. There was no clear and convincing medical evidence that plaintiff could not continue to fulfill the terms and conditions of her appointment. Further, there was no opportunity for plaintiff to present her position or to respond to the evidence.

Under Section IX, is subsection E. Issues Relating to Termination for Medical Reasons, which states:

> If a Faculty member is being terminated because it is determined that s/he can no longer fulfill the terms and conditions of the appointment because of medical reasons, the Faculty member may request that the evidence be reviewed by the Faculty Liaison Committee before a final decision is made by the Board of Trustees on the recommendation of the President.

FH, p. 70.

Once again, this was not applicable as it was never determined that plaintiff could not fulfill the terms and conditions of her appointment.

C. <u>Keuka College did not follow its own procedures for termination for cause</u>

Also within Section VIII, is subsection "H. Termination of Appointment by the Institution for Cause," which states:

> Termination of an appointment with continuous tenure, . . . are entitled to due process as outlined . . .
>
> 1. Adequate cause for dismissal will be related directly and substantially to the fitness of the Faculty member in his/her professional capacity as a teacher or researcher. Dismissal will not be used to restrain Faculty members in their exercise of academic freedom or other legal rights. (See AAUP Statement on Academic Freedom.)
>
> 2. Before the dismissal of a Faculty member with continuous tenure, or other Faculty member, including those with special appointment is actualized, this should be preceded by:
>
> a. A discussion between the Faculty member and appropriate administrative officers looking toward a mutual settlement;

10

    b. If the decision is made to proceed with the dismissal, a statement of charges, should be framed with reasonable particularity by the President or his/her delegate.

    3. Pending a final recommendation by the Hearing Committee as described in Section A, V.C, (7), the Faculty member will be suspended, or assigned to other duties in lieu of suspension, only if immediate harm to himself/herself or others is threatened by his/her continuance. Before suspending a Faculty member, pending an ultimate determination of his/her status through the institution's hearing procedures, the administration will consult with the Professional Standards Committee concerning the propriety, the length, and the other conditions of the suspension. A suspension which is intended to be final is a dismissal, and will be treated as such.

    4. Salary will continue during the period of suspension.

FH, pp. 67-68.

    In this case, plaintiff's termination was not related directly or substantially to her fitness in her professional capacity. Further, there was no discussion looking towards a mutual settlement, there was no statement of charges (detailed or otherwise), not was plaintiff suspended or assigned other duties and none of the procedures with regard to suspension were followed.

    Further within Section VIII is "J. Procedures Relating to Termination of Employment," which states:

    1. Review: The Board of Trustees will be available for ultimate review in case of termination of appointment.
    2. Salary: If the appointment is terminated, the Faculty member will receive salary or notice in accordance with the following schedule:

    a. At least three months, if final decision is reached by March 1 (or three months prior to the expiration) of the first year of probationary service.
    b. At least six months, if the decision is reached by Dec. 15 of the second year (or after nine months but prior to 18 months) of probationary service; at least one year, if the decision is reached after 18 months of probationary service or if the Faculty member has tenure.

FH, p. 68.

11

In the case of plaintiff, there was no review of the Board of Trustees of her termination.

FH also contains Section IX. Grievances, Complaints, and Faculty Liaison Committee. FH, p. 69, including subsection F. Issues Relating to Termination for Cause, which states:

> 1. The President of the College initiates the formal dismissal proceedings by informing the Faculty member, in writing, of the following:
> a. The specific charges which have led to the dismissal action as defined in AAUP Regulation 5(a) (Recommended Institutional Regulations on Academic Freedom and Tenure).
> b. His/her right to request a hearing committee to determine the validity of the reasons and/or whether these charges warrant removal from the Faculty as outlined in Section A, Article V, C, (7).
> c. The Faculty member's procedural rights, either in detail or by reference to published regulations.
> d. The Faculty member has 10 days from receipt of the letter to respond, in writing, whether s/he wishes to challenge the dismissal charges by requesting a formal hearing.
> 2. The Faculty member should respond in writing within 10 days of the receipt of the letter whether s/he wishes to challenge the dismissal charges by requesting a formal hearing.

In this case, there was no formal dismissal proceedings initiated, no specific charges were levels, there was no hearing committee or hearing, no ability to respond or be heard.

D.   <u>Plaintiff's case did not fall within Keuka College's guidelines concerning Covid-19</u>

> Regarding Covid-19, the contract states that Keuka College had the right to
> (i) eliminate/restructure courses (including, but not limited to, changing minimum/maximum class sizes or number of sections, establishing earlier or later start dates, other changes to the academic year, offering face-to-face, online and/or hybrid courses/sections, and implementing revised laboratory settings and protocols) as determined by Keuka College's sole discretion; and
>
> (ii) reduce compensation and/or modify/terminate this Agreement if Keuka College determines, in its sole discretion, that: (a) enrollment is or will be reduced (including residence hall enrollment), or (b) governmental or other regulatory requirements or restrictions limit or prevent Keuka College from providing its full academic curriculum in Keuka College's traditional manner (e.g., face-to-face courses on Keuka College's campus or at an AOE location). There is also a further paragraph stating that Keuka College shall not be held liable for any damage for an employee contracting Covid.

In this case, plaintiff's courses were neither eliminated or restructured. Enrollment was not reduced not was Keuka prevented from fulfilling its full academic curriculum.

E.     Keuka College terminated plaintiff without following its own procedures

The import of all of this is as follows: Plaintiff was a tenured professor under contract. In order to be terminated either for medical reasons or for cause, she is entitled to due process as set forth in the Faculty Handbook. Keuka College followed *none* of the procedures outlined. Further, the provisions specifically inserted by the administration of Keuka College with regard to Covid were not applicable to plaintiff's case. That is, the exceptions to procedures that Keuka College, reserved for itself did not apply to plaintiff's termination.

It is well settled that a "handbook of rules detailing tenure and discipline procedures is binding on an employer where the employer advises its employees that their employment is subject to the terms of the handbook." 52 N.Y. Jur.2d Employment Relations § 60 (Aug 2023 updated), citing, *Klinge v. Ithaca College*, 167 Misc. 2d 458, 461-464 (Sup Ct Tompkins Cty 1995), order aff'd as modified on other grounds, 235 A.D.2d 724 (3d Dep't 1997). In this case, the contract specifically states:

> It is assumed that all faculty will meet the obligations of professional responsibility, including advisement and other needed academic assistance to students, continued professional growth, and appropriate service to the Division, the College, and to the Community, as outlined by the Faculty Handbook, and as discussed with your Division Chair and approved by the Provost & Vice President for Academic Affairs.

Contract, Exhibit 1, p. 1. That is, plaintiff's employment was *explicitly* subject to the terms of the Faculty Handbook. *See, also, Taub v. Columbia University in the City of New York*, 149 A.D.3d 413, 414 (1st Dept. 2017) (the faculty handbook was controlling); *Ferrari v. Iona College*, 95 A.D.3d 576, 576 (1st Dept. 2012)("the provisions of Iona's Faculty Handbook, which were incorporated by reference into the contract."); *DeSimone v. Skidmore College*, 159 A.D.2d 926,

13

926, 553 N.Y.S.2d 240, 241 (3d Dept. 1990) ("Defendant's faculty handbook, which was incorporated into the parties' employment contract by specific reference in the appointment letter signed and accepted by both parties, contains a number of procedural and substantive provisions under the heading 'tenure and status.'").

Thus, in the case at bar, defendant Keuka College breached plaintiff's contract of employment by terminating her without following *any* of the procedures set forth in the Keuka College Faculty Handbook, that was specifically referenced and made part of the parties' contract. As such, plaintiff is entitled to partial summary judgment on this issue.

## CONCLUSION

Plaintiff has shown she is entitled to partial summary judgment on her claim for breach of contract against defendant Keuka College. This Court should grant this motion and set this matter down for a hearing on damages.

Dated: Penn Yan, NY
September 1, 2023

Respectfully submitted,

Stacey Mirinaviciene
Plaintiff pro se